LEE MILLER, WIDOW OF FRANK MILLER. DECEASED (EMPLOYEE), v. A.
CLARENCE CAUDLE. TRADING AS CAUDLE TRUCKING COMPANY
(EMPLOYER), AND AMERICAN MUTUAL LIABILITY INSURANCE COMPANY.

(Filed 19 November, 1941.)

**1. Master and Servant § 45b—Evidence held to sustain finding that quarry operations were incidental to trucking business and that policy covered blacksmith engaged in duties related to both businesses.**

The policy in suit was issued to an employer engaged in commercial trucking operations. The policy declaration listed as the work places of insured the address of the trucking business "and elsewhere in the State of North Carolina," and stipulated the employees covered as "truckmen . . . blacksmiths . . ." The evidence before the Industrial Commission tended to show that the employer hauled sand, gravel, and other materials in the prosecution of his business, and that later he leased streams and a local quarry from which he got sand and gravel for his customers, that the deceased employee was a blacksmith, that his duties included the repair of quarry machinery and the sharpening of picks and truck equipment, and that he was fatally injured by an accident arising out of and in the course of his employment. Defendant insurer contended that it was not given notice that the employer was engaged in quarrying and that the insurance rate covering such operations was higher than that charged in the policy. The policy provided for adjustment of premium at the end of the year. *Held:* The evidence is sufficient to sustain the finding of the Industrial Commission that the quarry operations were incidental to the trucking business and that the policy covered the deceased employee.

**2. Same—**

If the language of a policy of Workmen's Compensation insurance is ambiguous, the uncertainty and doubt will be resolved in favor of insured and the policy construed against insurer who selected its language.

**3. Master and Servant § 55b—**

The jurisdiction of the courts upon appeal from an award of the Industrial Commission is limited to matters of law and legal inference, and the findings of fact of the Industrial Commission when supported by competent evidence are conclusive.

APPEAL by defendant, American Mutual Liability Insurance Company, from *Bone, J.,* at 16 June, 1941, Civil Term, of WAKE.    Affirmed.

The hearing Commissioner rendered the following opinion: "When this case was called for hearing counsel for the plaintiff and both defendants agreed and the Commission so finds as a fact that plaintiff's deceased sustained an injury by accident on August 29, 1940, which arose out of and in the course of his employment; that death resulted from said injury by accident on the same date, and that at the time of plaintiff's deceased's injury by accident his average weekly wage was in an amount which would only entitle the plaintiff's deceased to recover, if any compensation is awarded, the minimum amount allowed under the Act, or $7.00 per week."

The hearing Commissioner sets forth the evidence: "The standard workmen's compensation policy of the American Mutual Liability Insurance Company, issued to A. Clarence Caudle, trading as Caudle Trucking Company, in an endorsement dated March 9, 1940, and covering the period from March 9, 1940, to March 9, 1941, includes the following classifications of operations as being covered by said workmen's compensation policy: 'Truckmen N. O. C.—including drivers, chauffeurs, and their helpers; stablemen; garagemen; blacksmiths; repairmen; riggers— (Storage Warehouse employees to be separately rated).'   From the evidence and by its greater weight the Commission makes the following additional Findings of Fact:

"A. That both the plaintiff's deceased and the defendant employer, A. Clarence Caudle, trading as Caudle Trucking Company, are subject to and bound by the provisions of the North Carolina Workmen's Compensation Act; and defendant employer regularly employing more than five persons, and that the American Mutual Liability Insurance Company of Boston, was the carrier for the defendant employer at the time plaintiff's deceased sustained his injury by accident on August 29, 1940, which resulted in his death on the same date.

"B. That at the time of his injury by accident on August 29, 1940, and subsequent death on the same date, plaintiff's deceased, Frank Miller, was a regular employee of the defendant employer, A. Clarence Caudle, trading as Caudle Trucking Company.

"C. That the plaintiff, Lee Miller, was the legal wife of the deceased employee, Frank Miller, at the time of his accident and subsequent death, and that the said Lee Miller and her husband, the deceased employee, Frank Miller, were living together at the time of his injury by accident hereinbefore mentioned.

"D. That the deceased employee, Frank Miller, at the time of his injury by accident and death on August 29, 1940, had no children, and

that there was no one either wholly or partially dependent upon him for support at this time with the exception of his wife, Lee Miller, the plaintiff in this case.

"From the foregoing Findings of Fact, the Commission makes the following Conclusions of Law:

"1. That Frank Miller, plaintiff's deceased, was a regular employee of the defendant employer, A. Clarence Caudle, trading as Caudle Trucking Company, at the time of his injury by accident and death on August 29, 1940.

"2. That both plaintiff's deceased and the defendant employer are subject to and bound by the provisions of the North Carolina Workmen's Compensation Act, it having been found as a fact that the defendant employer had more than five regular employees at the time plaintiff's deceased sustained his injury by accident.

"3. The only question at issue or in serious controversy at this said hearing was whether or not the Workmen's Compensation Insurance Policy issued by the defendant carrier, the American Mutual Liability Insurance Company of Boston, covered and included the deceased employee, Frank Miller, at the time of his injury by accident and death on August 29, 1940.

"The defendant carrier contended that said policy did not cover the quarry operations of A. Clarence Caudle, trading as Caudle Trucking Company, and that inasmuch as the deceased employee was a regular employee at the quarry and not of the trucking operations that said compensation policy did not cover him at the time of his injury and death. It is true that the defendant employer, A. Clarence Caudle, did not notify the defendant carrier that he was conducting a rock quarry business in connection with his trucking business, however, from the evidence all of this defendant employer's business was conducted together; all of the men were kept on the same pay roll, and the truck drivers occasionally did some work around the quarry. The compensation policy does specifically include the classification of blacksmith, and the plaintiff's deceased was the only blacksmith working for the defendant employer at the time of said employee's injury and death. Although undoubtedly the principal part of his blacksmith work was in connection with the quarry operations, there is specific evidence that he repaired the picks and shovels used in the regular trucking operations. The standard workmen's compensation policy issued by the American Mutual Liability Insurance Company for the employer, A. Clarence Caudle, trading as Caudle Trucking Company, was in effect and the premium had been paid. Therefore, from all of the evidence, the Commission concludes as a matter of law that the said workmen's compensation policy designated as defendant Caudle's Exhibit A, did cover the deceased employee, Frank

Miller, in his regular work, that of a blacksmith, at the time of said employee's injury and death. *Johnson v. Asheville Hosiery Co.*, I. C. 41, 1929. *Holt v. Oak Ridge Military Institute*, 3 I. C. 270, 1932. *Kenan v. Duplin Motor Co., et al.*, 203 N. C., 108.

"4. That Lee Miller, widow of the deceased employee, Frank Miller, is entitled to be paid compensation by the defendant carrier, the American Mutual Liability Insurance Company, in the amount of $7.00 per week for a period of 350 weeks.

"Award: Let an award issue conforming to the foregoing conclusions of law. The defendant carrier, the American Mutual Liability Insurance Company, will pay funeral benefits for plaintiff's deceased not to exceed the sum of $200.00.

"The defendant, the American Mutual Liability Insurance Company as carrier for the defendant employer will pay all hearing costs. The defendant will also pay all medical and hospital bills for services rendered the plaintiff's deceased as the result of his injury by accident on August 29, 1940, when approved by the Commission. Pat Kimzey, Commissioner."

Notice of formal award was duly given. Application for review was duly given by the American Mutual Liability Insurance Company, defendant. Notice of review was duly given.

Opinion for the Full Commission by T. A. Wilson, Chairman, filed 28 April, 1941—Docket 9882: "This case came on for review before the Full Commission at Raleigh, North Carolina, April 17, 1941, upon appeal of the defendant, American Mutual Liability Insurance Company, in apt time from the award of Commissioner Kimzey awarding compensation to the plaintiff. Appearances: Plaintiff: Sam J. Morris, Raleigh. Defendants: Thos. W. Ruffin, Attorney, Raleigh, N. C., appearing on behalf of the employer, Caudle. A. W. Sapp, Attorney, Greensboro, N. C., appearing on behalf of the carrier, American Mutual Liability Insurance Company.

"The defendant compensation insurance carrier, the American Mutual Liability Insurance Company, contends that the compensation policy issued to A. Clarence Caudle, trading as Caudle Trucking Company, did not cover the employment in which the plaintiff's deceased, Frank Miller, was engaged at the time he was injured, August 29, 1940. The defendant carrier contends that the policy covered the trucking business, and that said Caudle was engaged in quarrying, which was not covered by the policy. The evidence discloses that the policy in question was introduced and covers: 'Truckmen N. O. C.—including Drivers, Chauffeurs and their helpers; Stablemen; Garagemen; *Blacksmiths;* Repairmen; Riggers.—(Storage Warehouse employees to be separately rated.)'

"The further evidence discloses that the said Caudle was engaged in the trucking business, hauling sand and gravel and owned or operated approximately 14 trucks in this business; that to supply the demand of his customers he rented or leased the rights of several streams as a source of supply for sand and gravel; that subsequent to the purchase of the compensation policy in question said Caudle purchased or leased a quarry to further supply the demand for gravel; that one truck was kept in the quarry at all times, and at times he used four or five trucks in the quarry in hauling out the gravel. It appears that the deceased worked as a blacksmith, one of the classifications listed in the policy, both in repairing the truck equipment and that of the quarry. There is no evidence of the defendant employer employing any other blacksmith than the deceased.

"The Full Commission affirms the Findings of Fact of the Hearing Commissioner. The Full Commission makes the following additional Findings of Fact:

"1. That the deceased was employed as a blacksmith, which is one of the classifications covered by the compensation policy of the defendant carrier, American Mutual Liability Insurance Co.

"2. That the operation of the quarry was incident and appurtenant to the regular business of A. Clarence Caudle, trading as Caudle Trucking Company, in carrying on his trucking business, which included the operation of a steam shovel, renting of branches by the month, hauling stone, unloading steel, cement, and contract hauling 'under a shovel.'

"3. That the defendant employer maintained one truck in the quarry at all times and often as many as four or five trucks would be used in the quarry in hauling out gravel.

"4. That the blacksmith was required to repair the picks, mattocks, shovels, pitchforks, and other tools used in the regular course of the defendant employer's business.

"As to quarrying carrying a different classification and insurance rate, the compensation policy issued by the defendant carrier carries the following clause in Condition A—Basis of Premium: 'At the end of the policy period the actual amount of the remuneration earned by employees during such period shall be exhibited to the Company, as provided in condition C hereof, and the earned premium adjusted in accordance therewith at the rates and under the condition herein specified. If the earned premium, thus computed, is greater than the advance premium paid, this employer shall immediately pay the additional amount to the Company, if less, the Company shall return to this employer the unearned portion, but in any event the Company shall retain the minimum premium stated in said declaration. . . .'

"Section 73 of the Compensation Law provides that all rates charged by all carriers of insurance 'shall be fair, reasonable and adequate,' and

that said rates shall be 'approved by the Commissioner of Insurance.' Thus, it is apparent that every provision is made to protect the interests of the carrier. as to the collection of insurance premium.

"The Full Commission feels that the instant case clearly comes within the decision of *Kenan v. Motor Co.,* 203 N. C., 108, and in many ways is an even stronger case, for the deceased was a blacksmith and was so engaged at the time of his injury, and blacksmithing is one of the classifications covered in the policy. In the *Kenan case, supra,* the Court said: ' "If the clause in question is ambiguously worded, so that there is any uncertainty as to its right interpretation, or if for any reason there is doubt in our minds concerning its true meaning, we should construe it rather against the defendant, who was its author, than against the plaintiffs, and any such doubt should be resolved in favor of the latter, giving, of course, legal effect to the intention, if it can be ascertained, although it may have been imperfectly or obscurely expressed." *Walker, J.,* in *Bray v. Ins. Co.,* 139 N. C., at p. 393; *Allgood v. Ins. Co.,* 186 N. C., at pp. 420-421.'

"The Full Commission having affirmed the Findings of Fact of the Hearing Commissioner and found additional facts, now affirms and adopts as its own the Conclusions of Law and the Award of the Hearing Commissioner. The defendants will pay the additional costs of the hearing before the Full Commission. T. A. Wilson, Chairman. Examined and approved by: Buren Jurney, Pat Kimzey, Commissioners."

Notice of formal award was duly given. Appeal was duly made by American Mutual Liability Insurance Company to the Superior Court.

The following judgment was rendered by the Superior Court: "This is an appeal by the defendant, American Mutual Liability Insurance Company, from the decision and award of the North Carolina Industrial Commission in favor of plaintiff against both defendants, the matter having been regularly calendared for hearing at this term now comes on to be heard. After considering the record certified to this Court by the North Carolina Industrial Commission, and the argument of counsel, the Court is of the opinion that there is evidence to support the Commission's findings of fact and that the decision of the said Commission is not founded upon error of law. It is, therefore, by the Court, Ordered, Adjudged and Decreed that the award and decision of the North Carolina Industrial Commission be and the same is hereby affirmed. Walter J. Bone, Judge Presiding."

To the above judgment defendants excepted and assigned error as follows:

"1. For that the Judge of the Superior Court found that the findings of fact, conclusions of law and award of the North Carolina Industrial Commission should in all respects be affirmed, which is defendant's Exception #1.

"2. For that the Judge of the Superior Court did not find that the findings of fact, conclusions of law and award of the North Carolina Industrial Commission were not supported by the evidence contrary to the law arising thereon, and for that the Court failed and refused to set aside the findings of fact and conclusions of law and enter a judgment dismissing the award, which is defendant's Exception #2.

"3. For that the Judge entered the judgment as appears of record, which is defendant's Exception #3."

*Sam J. Morris for Lee Miller, widow of Frank Miller.*

*Thos. W. Ruffin for defendant A. Clarence Caudle, trading as Caudle Trucking Company.*

*Sapp, Sapp & Atkinson for defendant American Mutual Liability Insurance Company.*

CLARKSON, J. The only question involved in this controversy is whether or not the Workmen's Compensation Insurance Policy issued by the defendant carrier, the American Mutual Liability Insurance Company, of Boston, Mass., covered and included the deceased employee, Frank Miller, a blacksmith, at the time of his injury by accident and death on 29 August, 1940? We think the employee, Frank Miller, deceased, was covered by the Compensation Insurance policy.

This is an action brought by plaintiff, widow of Frank Miller, deceased, under the N. C. Workmen's Compensation Act, in which she seeks compensation for the death of her husband for "injury by accident arising out of and in the course of the employment." N. C. Code, 1939 (Michie), part section 8081 (f).

The hearing Commissioner set forth, which was confirmed by the Full Commission: "Finds as a fact that plaintiff's deceased sustained an injury by accident on August 29, 1940, which arose out of and in the course of his employment; that death resulted from said injury by accident on the same date."

It is admitted that the American Mutual Liability Insurance Company, one of the defendants, issued to A. Clarence Caudle, trading as Caudle Trucking Company, the other defendant, a standard Workmen's Compensation Policy, covering the period from 9 March, 1940, to 9 March, 1941. The premium of $323.40 was paid on the policy. The injury by accident causing the death of Frank Miller, occurred on 29 August, 1940, during the life of the policy.

The controversy between the parties narrows itself down mainly to one question: Did the insurance policy include the deceased employee, a blacksmith? The plaintiff contends that it did; the defendant Caudle, trading as Caudle Trucking Company, contends that it did. The defend-

ant, American Mutual Liability Insurance Company, contends it did not. The Industrial Commission found that it did. Was there sufficient competent evidence to sustain this finding?

In the policy declaration is the following: "Locations of all factories, shops, yards, buildings, premises, *or other work places* of this employer, by Town or City, with Street and Number: 3020 Hillsboro St., Wake County, Raleigh, N. C., *and elsewhere in the State of North Carolina."* (Italics ours.)·

Then is set forth those who are covered by the policy: "Truckmen, N. O. C.—including Drivers, Chauffeurs and their Helpers; Stablemen; Garagemen; *Blacksmiths;* Repairmen; Riggers.—(Storage Warehouse employees to be separately rated.)"

The Industrial Commission found: "The evidence further discloses that the said Caudle was engaged in the trucking business, hauling sand and gravel and owned or operated approximately 14 trucks in this business; that to supply the demand of his customers he rented or leased the rights of several streams as a source of supply for sand and gravel; that subsequent to the purchase of the compensation policy in question said Caudle purchased or leased a quarry to further supply the demand for gravel; that one truck was kept in the quarry at all times, and at times he used four or five trucks in the quarry in hauling out the gravel. It appears from the evidence that the deceased worked as a blacksmith, one of the classifications listed in the policy, both in repairing the truck equipment and that of the quarry. There is no evidence of the defendant employer employing any other blacksmith than the deceased. . . ."

The Industrial Commission found the further facts:

"1. That the deceased was employed as a blacksmith, which is one of the classifications covered by the compensation policy of the defendant carrier, American Mutual Liability Insurance Company.

"2. That the operation of the quarry was incident and appurtenant to the regular business of A. Clarence Caudle, trading as Caudle Trucking Company, in carrying on his trucking business, which included the operation of a steam shovel, renting of branches by the month, hauling stone, unloading steel, cement, and contract hauling 'under a shovel.'

"3. That the defendant employer maintained one truck in the quarry at all times and often as many as four or five trucks would be used in the quarry in hauling out gravel.

"4. That the blacksmith was required to repair the picks, mattocks, shovels, pitchforks, and other tools used in the regular course of the defendant employer's business."

The declaration says: "Or other work places of this employer," and states "3020 Hillsboro Street, Raleigh, N. C., and elsewhere in the State of North Carolina." The Industrial Commission found "That the oper-

ation of the quarry was incident and appurtenant to the regular business" of defendant Caudle. There are other findings of fact by the Industrial Commission not necessary to be repeated to sustain the award.

It is contended by defendant Insurance Company that the quarry operation was subsequent to the issuing of the Insurance Policy, and a higher rate of premium exists for quarry coverage, and that on the entire record the policy did not cover the quarry operation and the judgment should be rendered dismissing the award. We cannot so hold, from the findings of fact of the Commission before set forth.

In A. Clarence Caudle's testimony is the following: "Q. In your policy you classified truck driving, repairmen, helpers, garagemen, and blacksmiths? Ans.: Yes, sir. Q. Now, what kind of business were you engaged in at the time you took this policy out? Ans.: Well, my business has been, as I tried to explain it to Mr. Heston (agent for the Insurance Company) at the time that I bought this policy, consists of contract hauling. Probably I'll put three or four trucks under a shovel, or I'll— Q. Under the shovel, explain that? A. I mean a steam shovel. Then I rent branches by the month; I have about three or four that consist of hauling stone, unloading steel, cement, I explained to him at the time I taken my policy out; they tell me that I am covered. A. Consists of hauling stone, branch gravel, sand, unloading steel, cement, limestone, contract hauling under a shoveling; I presume that is about all it covered. Q. Was the deceased a blacksmith? Ans.: Yes, sir, we have to have a blacksmith. We have picks, mattocks, shovels, pitchforks, all in our line of work. Q. Did he work on the tools in your regular line of work? Ans.: Yes, sir. Q. Did he work on tools not connected specifically to your pit or quarry, as they call it? Ans.: Sharpened any kind of tools which we might have which consisted of shovels, picks, and mattocks, and also steel; that is about all the work we did have for a blacksmith."

In *Blassingame v. Asbestos Co.*, 217 N. C., 223 (233), it is written: "In *Johnson v. Hosiery Co.*, 199 N. C., 38 (40), this Court said: 'It is generally held by the courts that the various Compensation Acts of the Union should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow, and strict interpretation.' We see nothing prejudicial to defendants. In II Schneider, Workmen's Compensation Law (2d Ed.), part sec. 554, at pp. 2002-3, we find: 'Courts may not interfere with the findings of fact, made by the Industrial Commission, when these are supported by evidence, even though it may be thought there be error.' 'The rule . . . is well settled to the effect that, if in any reasonable view of the evidence it will support, either directly or indirectly, or by fair inference, the findings made by the Commission, then they must be regarded as conclusive'

(citing a wealth of authorities). Courts cannot demand the same precision in the finding of Commission as otherwise might be if the members were required to be learned in the law." *Graham v. Wall, ante,* 84 (88).

In *Bray v. Ins. Co.,* 139 N. C., 390 (393), *Walker, J.,* for the Court, said: "If the clause in question is ambiguously worded, so that there is any uncertainty as to its right interpretation, or if for any reason there is doubt in our minds concerning its true meaning, we should construe it rather against the defendant, who was its author, than against the plaintiffs, and any such doubt should be resolved in favor of the latter, giving, of course, legal effect to the intention, if it can be ascertained, although it may have been imperfectly or obscurely expressed. *Grabbs v. Ins. Co.,* 125 N. C., 389."

The Insurance Company cites provisions of the policy, to sustain its contention, as follows: "All business operations, including the operative management and superintendence thereof, conducted at or from the locations and premises defined above as declared in each instance by a disclosure of estimated remuneration of employees under such of the following divisions as are undertaken by this Employer. 1. All industrial operations upon the premises. 2. All office forces. 3. All repairs or alterations to premises. 4. Specially rated operations on the premises. 5. Operations not on the premises." It will be noted that this says "Operations not on the premises." "The foregoing enumeration and description of employees includes all persons employed in the service of this employer in connection with the business operations above described to whom remuneration of any nature in consideration of service is paid." "VI. This agreement shall apply to such injuries so sustained by reason of the business operations described in said declarations which, for the purpose of this insurance, shall include all operations necessary, incident, or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said declarations or elsewhere in connection with, or in relation to, such work places." It will be noted that this does not confine the "work places." It says "or elsewhere in connection with or in relation to, such work places."

Construing these and the previous provisions of the policy as before recited, we do not think that a fair and reasonable construction of the entire policy would justify the contention of defendant Insurance Company. If the language of the policy is not clear, but ambiguous, and there is uncertainty as to its right interpretation, the doubt is resolved against the Insurance Company.

We think the cases cited by the Insurance Company, *Burnett v. Paint Co.,* 216 N. C., 204, and *Paulson v. Industrial Accident Commission*

(Cal.), 112 Pa., 108, 2m 710, distinguishable from the present action, in the light of the language of the insurance policy and the facts found by the Industrial Commission. We here are not a fact-finding body, as we have said before. If we were, we might sometimes reach a different conclusion. If there is any competent evidence to support the findings of fact made by the Industrial Commission, we are bound by those findings. The findings of fact of the Industrial Commission contain also other reasons other than what we have set forth, why the award should be sustained. Under section 60 of the Compensation Act, the award of the Commission is "conclusive and binding as to all questions of fact." *Chambers v. Oil Co.,* 199 N. C., 28 (32).

We think this case is governed by *Kenan v. Motor Co.,* 203 N. C., 108. The able argument and brief of defendant Insurance Company is persuasive but not convincing.

For the reasons given, the judgment of the court below is
Affirmed.