MRS. LOIS BEACHAM CALLIHAN, WIDOW, MARY ANN CALLIHAN AND SARAH LEE CALLIHAN, MINOR CHILDREN OF WILLIAM BEAUFORT CALLIHAN, DECEASED EMPLOYEE, v. BOARD OF EDUCATION OF ROBESON COUNTY, BITUMINOUS CASUALTY CORPORATION, STATE SCHOOL COMMISSION AND/OR DIVISION OF VOCATIONAL EDUCATION, BOTH SELF-INSURERS.

(Filed 16 December, 1942.)

**Schools § 23: Master and Servant § 39f—**

> A county board of education is the sole employer of one under contract to teach vocational agriculture in a county school, where such teacher's salary is paid in part from funds furnished as a gift to such board by the State and Federal Governments, and, as such sole employer, is liable, with its insurance carrier, under the Workmen's Compensation Act, for the death of such teacher from an injury by accident arising out of and in the course of his employment. School Machinery Act of 1939, ch. 358, sec. 22.

APPEAL by Board of Education of Robeson County and Bituminous Casualty Corporation from *Johnson, Special Judge,* at 31 August, 1942, Term, of ROBESON. Affirmed.

This proceeding was brought before the Industrial Commission, under the Workmen's Compensation Act, for compensation to the widow and two children of William B. Callihan, deceased, against the Board of Education of Robeson County, the State School Commission, the Division of Vocational Education, and the Bituminous Casualty Corporation, insurance carrier for the Board of Education of Robeson County. The State School Commission and the Division of Vocational Education are designated as self-insurers.

W. B. Callihan began employment in St. Pauls public school in Robeson County on 1 July, 1941, under a contract reading as follows:

"AGREEMENT BETWEEN COUNTY OR LOCAL BOARD AND TEACHER:

"I agree to teach agriculture in the St. Pauls School at a salary of $187.00 per month or $2,244.00 a year, with $200.00 in addition to salary to pay traveling expenses in visiting projects and doing community work.

"My salary will start July 1, 1941. If I fail to send in reports on time, it is my understanding that the State Board of Vocational Education will discontinue aid until the reports are received. Any amount of money deducted from the State and Federal Funds for the above reason will be deducted from my salary.

Signed: W. B. CALLIHAN,
(Teacher of Agriculture.)
C. L. GREEN,
(County Superintendent.)
ROY H. THOMAS,
(State Supervisor Vocational Agriculture.)"

Accompanying this agreement there was an application by the local county board for State and Federal funds to maintain vocational agricultural instruction in St. Pauls School for the year 1941-1942, which took the form of an agreement, as follows:

"STATE DEPARTMENT OF PUBLIC INSTRUCTION
Division of Agricultural Education
State College Station
Raleigh, N. C.

APPLICATION FOR AID IN VOCATIONAL AGRICULTURE

AGREEMENT BETWEEN COUNTY OR LOCAL BOARD AND
STATE BOARD FOR VOCATIONAL EDUCATION

"We hereby make application for State and Federal Funds to maintain instruction in vocational agriculture in the St. Pauls School for the year 1941-1942. We agree to furnish the necessary equipment, rooms, provide one-third of the teacher's salary and provide satisfactory traveling allowance for the teacher to visit home projects and do community work.

Signed:
A. B. McRAE
(Chairman of School Board)
Elrod, N. C.
(Post Office).

C. L. GREEN,
(County Superintendent) ,
Lumberton, N. C.
(Post Office).

Agreed to this 1st day of July, 1941."

With this application the contract with Callihan was incorporated, and the following commitment was made:

"THIS INFORMATION TO BE FILLED IN BY THE STATE SUPERVISOR:

"On the basis of the above salary, the St. Pauls School will receive a total of $1,496.00 in quarterly payments.

Approved:   ROY H. THOMAS,
(State Supervisor, Vocational Agriculture)."

On 2 October, 1941, Mr. Callihan came to his death in an automobile accident on the public highway en route from St. Pauls to Lumberton, in the same county, at the instance of Supervisor Osteen to attend a monthly meeting in the latter town in connection with his vocational work. There was evidence tending to show that the injury and death were caused by accident arising out of and in the course of his employment, and while discharging the duties of the employment.

The Board of Education of Robeson County carried employment insurance with its codefendant Bituminous Casualty Corporation, the latter on the face of the policy agreeing:

"(a) To pay promptly to any person entitled thereto under the workmen's compensation law and in the manner therein provided the entire amount of any sum due and all installments thereof as they become due.

"1. To such person, because of the obligation for compensation for any such injury imposed upon or accepted by this employer under such of certain statutes as may be applicable thereto, cited and described in an endorsement attached to this policy, each of which statutes is herein referred to as the workmen's compensation law, and

"2. For the benefit of such person, the proper cost of whatever medical, surgical, nurse or other hospital services, medical or surgical apparatus or appliance and medicine, or in the event of fatal injury, whatever funeral expenses are required by the provisions of such workmen's compensation law."

The face of the policy also contains the following provision:

"It is agreed that all of the provisions of each workmen's compensation law covered hereby shall be and remain a part of this contract as fully and completely as if written herein, so far as they apply to compensation

CALLIHAN *v.* BOARD OF EDUCATION.

or other benefits for any personal injury or death covered by this policy while this policy shall remain in force. Nothing herein contained shall operate to so extend this policy as to include within its terms any workmen's compensation law, scheme or plan not cited in an endorsement hereto attached."

The policy carries further agreements as to indemnity between employer and insurer not necessary to this statement.

On the policy is the following endorsement:

"Attached to and forming a part of Policy No. WC-89737, issued by the Bituminous Casualty Corporation, Rock Island, Illinois, to Robeson County Board of Education, Lumberton, N. C. Effective February 6, 1940 and notwithstanding anything contained in the policy to the contrary, it is understood and agreed that whereas the State of North Carolina may pay remuneration in whole or in part to all or a portion of the persons working in the named employer's schools, it is agreed that the insurance provided by the policy to which this endorsement is issued to form a part shall not provide workmen's compensation benefits as stated in said policy, to persons who are receiving their entire remuneration from the State of North Carolina at the time injury occurs, that the Company shall not be liable for a greater proportion of any such benefits than the remuneration paid by the named employer on the date of injury to the injured employee bears to the total remuneration received by the injured employee, both from the named employer and the State of North Carolina on date injury is sustained. Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or provisions of this policy other than as above stated.

BITUMINOUS CASUALTY CORPORATION

By: H. H. CLEAVELAND.

Dated February 7, 1940."

The School Machinery Act of 1939 contains the following provision pertinent to workmen's compensation liability:

"The county and city administrative units shall be liable for Workmen's Compensation for school employees whose salaries or wages are paid by such local units from local funds, and such local units shall likewise be liable for Workmen's Compensation of school employees employed in connection with teaching vocational agriculture, home economics, trades and industrial vocational subjects, supported in part by State and Federal funds, which liability shall cover the entire period of service of such employees. Such local units are authorized and empowered to

provide insurance to cover such compensation liability and to include the cost of such insurance in their annual budgets." Sec. 22.

It is in evidence from C. L. Green, Superintendent of the Robeson County Public Schools, that he interpreted the contract with Callihan as making him "an employee of Robeson County and the State of North Carolina," and that premiums on the policy were adjusted in that way.

The Full Commission construed the contract as making the Robeson County Board of Education sole employer, and held the endorsement on the policy as inapplicable to the law and facts of the employment. An award was made against the Robeson County Board of Education and Bituminous Casualty Company on this basis, and these defendants appealed. In the Superior Court the award was sustained, and the defendants appealed to this Court, making several assignments of error.

*John S. Butler for plaintiffs.*

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State School Commission and the State Board for Vocational Education, defendants.*

*E. M. Johnson for Board of Education of Robeson County, defendant.*

*Guthrie, Pierce & Blakeney for Bituminous Casualty Corporation, defendant.*

SEAWELL, J. There is plenary evidence to sustain the finding that Callihan came to his death from an injury by accident arising out of and in the course of his employment, and our review on that point can go no further. *Blevins v. Teer,* 220 N. C., 135, 16 S. E. (2d), 659; *Miller v. Caudle, ibid.,* 308, 17 S. E. (2d), 487. It is stipulated that plaintiffs are dependents.

The main controversy here is over the proper construction of Callihan's contract of employment. Does the fact that the ultimate source of two-thirds of the money expended by the local board in paying his salary is the State, or the State and the Federal Government, constitute the State a two-thirds employer, and is the remuneration paid in part by the State?

The answer to this question is, however, unnecessary to a decision of the appeal of the local board. Section 22 of the School Machinery Act of 1939 purports to make the local unit—in this case, the Robeson County Board of Education—liable "for Workmen's Compensation of school employees employed in connection with teaching vocational agriculture, home economics, trades and industrial vocational subjects, supported in part by State and Federal Funds, which liability shall cover the entire period of service of such employees." The law is based

on the equitable principle that the fund provided for State-wide support of the public schools, most of which do not enjoy the privilege of vocational instruction as part of the curriculum, should not bear a burden more appropriate to a local enterprise, to which the State has given its aid. At any rate, the Legislature had the power to put liability on the local unit, and it has done so. In the face of this statute, the appeal of the Robeson County Board of Education is without merit.

It appears from the record that vocational instruction in the schools fortunate enough to have that feature is maintained by a fund, one-third of which is raised by the local unit and two-thirds contributed by the State, of which one-half is a gift in aid by the Federal Government. The contract of employments purports to be "An Agreement Between County or Local Board and Teacher," and the Industrial Commission so construed it. In view of the fact that the State did not undertake to pay Callihan anything as salary or remuneration, but merely agreed to furnish the St. Pauls School $1,496.00 in quarterly payments, "on the basis" of the salary the local board, by accepting Callihan's offer, had agreed to pay, we think the construction placed on the various commitments evidenced by these related documents is reasonable, and we are in agreement with that view. We regard the attitude, and the relation, of the State toward local school enterprises seeking to afford vocational training as being very similar to that of the Federal Government toward the same project, resulting in a mere gift in aid. The fact that the State follows its investment with suitable supervision does not make it an employer. It does the same for the ninth month of school financed by local taxation.

Under this construction the Robeson County Board of Education was the sole employer of Callihan and, while obtaining the funds in part from local taxation and in part from State and Federal contributions, paid his remuneration—a factual situation to which the endorsement on the policy of insurance does not apply, however pertinent it may be to other parts of section 22, relating to the liability of the State and local units where the salary of the teacher is partly paid by each.

The judgment of the court below sustaining the award is

Affirmed.