RUTH MILLWOOD (EMPLOYEE), v. FIRESTONE COTTON MILLS (EMPLOYER), AND LIBERTY MUTUAL INSURANCE COMPANY (CARRIER).

(Filed 3 May, 1939.)

1. **Master and Servant § 42b—Evidence held not to sustain finding that additional hospitalization would tend to lessen the period of employee's disability.**

   All the expert opinion evidence in this case tended to show that after hospitalization and treatment of the employee for an injury resulting from an accident arising out of and in the course of her employment, the employee developed dementia praecox, that said mental condition was incurable and that although additional hospitalization and treatment might tend to lessen her disability, the employee was permanently disabled and would have to remain for her life in an institution for constant care and attention. *Held:* There is no sufficient evidence to sustain the finding of the Industrial Commission that such additional hospitalization and treatment would tend to lessen the period of the employee's disability.

2. **Same—**

   Whether additional hospitalization and treatment will tend to lessen the period of an injured employee's disability so as to sustain an award of additional medical attention is a question for the Industrial Commission upon competent evidence.

3. **Master and Servant § 55d—**

   A finding of fact by the Industrial Commission which is not supported by any competent evidence is not conclusive.

**4. Master and Servant § 41b—The Industrial Commission may award additional hospitalization only upon proper finding that it would tend to lessen the period of employee's disability.**

The provision of the Workmen's Compensation Act that the employer should be liable for additional medical treatment to effect a cure or give relief, Public Laws 1929, ch. 120 (25), as amended by Public Laws 1931, ch. 274 (4), is limited by the provision of the section to cases in which such additional medical treatment would tend to lessen the period of the employee's disability, and the discretionary power to award such additional medical treatment is also subject to this limitation; nor may liability for medical attention be extended upon the ground that public policy demands that the care of a permanently disabled employee should not be cast upon the State, the extent of liability under the act being definitely prescribed by its provisions.

**5. Constitutional Law § 6a—**

It is the duty of the courts to declare the law as written and not to make it.

**6. Appeal and Error § 20a—**

An index of exhibits solely by the alphabetical designation of such exhibits does not comply with the requirements of Rule of Practice in the Supreme Court No. 19.

**7. Appeal and Error § 28—**

A reference in the brief to exhibits should designate the page of the record on which they are printed.

APPEAL by defendants from *Gwyn, J.,* at March Term, 1939, of GASTON.

Proceeding under the North Carolina Workmen's Compensation Act in which defendants petition for termination of their liability for expense of further medical and hospital treatment. Public Laws 1929, ch. 120, sec. 25, as amended by Public Laws 1931, ch. 274, sec. 4.

The claimant, Ruth Millwood, sustained an injury by accident arising out of and in the course of her employment by defendant Firestone Cotton Mills Company when on 21 February, 1936, she was stricken on the head by a flying broken belt.

On 3 March, 1936, she entered into an agreement with the defendants for compensation at the rate of $7.20 per week, beginning 28 February, 1936, for the number of weeks required for partial or total disability as the case might be (sections 29 and 30 of the act). The agreement was duly approved by the North Carolina Industrial Commission as required by the act.

After being treated by physicians in Gastonia, she was taken to and entered in the Charlotte Sanatorium in the city of Charlotte, N. C., where she was treated by and under the supervision of Dr. R. F. Leinbach. While there she developed serious mental disorder. Having there "nothing further to offer her in way of treatment," she was re-

moved to Broadoaks Sanatorium, in Morganton, N. C., a private institution for the treatment of mental diseases, of which Dr. James W. Vernon is superintendent. She remained there until 1 July, 1938, when by order of the North Carolina Industrial Commission she was transferred to the State Hospital at Morganton, N. C.

On 14 February, 1938, defendants petitioned the North Carolina Industrial Commission for relief from liability for the expense of further medical and hospital treatment on the ground that they had furnished such treatment for the length of time required by the Workmen's Compensation Act, and for that unless further treatment would "tend to lessen the period of disability" they are not liable for the expense thereof.

The petition came on regularly for hearing at Gastonia, N. C., on 23 March, 1938, before Commissioner J. Dewey Dorsett. By agreement, written reports of Dr. Crispell, neurologist and psychiatrist of Duke Hospital, who had examined her both while she was in Charlotte Sanatorium and while in Broadoaks, and Drs. Leinbach and Vernon were admitted as a part of the record. In addition, Drs. Leinbach and Vernon testified in person.

Thereupon Commissioner Dorsett, after stating contention of defendants, and referring to the reports of the three distinguished doctors, states: "From the evidence the Commission finds as a fact that the plaintiff is unable to earn any wages. She is totally disabled. And we further find as a fact that the plaintiff is unable to look after herself. She is in need of custodial care."

Thereupon on 30 March, 1938, the North Carolina Industrial Commission made an award as follows: "Upon the finding that plaintiff sustained an injury by accident arising out of and in the course of her employment, resulting in permanent total disability; that plaintiff for some time has been in an institution for the treatment of mental diseases in Morganton; that plaintiff is unable to look after herself and is in need of custodial care: Defendants will continue to furnish plaintiff the proper hospital, custodial and medical treatment needed."

Upon appeal by defendants thereto, the Full Commission made these, among other, findings of fact and conclusions: "The plaintiff is now suffering from dementia praecox. . . . The facts are fully set forth in the able opinion of Commissioner Dorsett. . . . The evidence in this case tends to show, according to medical experts, that the plaintiff is now suffering from an incurable mental condition. At the same time the medical evidence tends to establish the necessity of some kind of care at all times. Therefore, the Commission feels that it is contrary to public policy to require that the State bear the expense of maintaining the plaintiff who suffered an injury in industry."

The Commission also finds as a fact that it is for the best interests of all parties concernèd, including the plaintiff herself, that she be transferred from the private sanatorium to the public hospital at Morganton, and approved previous informal order to that effect.

Then the Full Commission affirmed the findings of fact, conclusions of law and the award of the hearing Commissioner, except with respect to treatment at private sanatorium, and ordered that defendants be responsible for such cost as is charged by the public hospital for private patients from and after 1 July, 1938. An award, denying petition of defendants issued from which defendants appeal to the Superior Court, and assigned error.

At the January Term, 1939, it appearing that no specific finding of fact had been made that additional hospitalization and treatment would tend to lessen the period of disability, the presiding judge remanded the cause to the North Carolina Industrial Commission to the end and with direction that specific finding of fact be made on that question.

Pursuant thereto, the North Carolina Industrial Commission, without hearing further evidence, entered a decree in which these recitals appear: "The Commission finds as a fact that additional hospitalization and treatment would tend to lessen the period of disability of the plaintiff, · Ruth Millwood. . . . In all other respects the findings of fact, conclusions of law and the award of the individual Commissioner, and the original findings of fact, conclusions of law and the award of the Full Commission are herein affirmed." Supplemental award issued thereupon. Defendants excepting to the finding "that additional hospitalization and treatment would tend to lessen the period of disability of plaintiff," appealed from the award to the Superior Court. Judgment was there entered sustaining the findings, order and award of the Commission.

Defendants appeal to Supreme Court and assign error.

*C. B. McRorie for plaintiff, appellee.*
*J. Laurence Jones and J. L. DeLaney for defendants, appellants.*

WINBORNE, J. On this record, is there sufficient competent evidence to support the finding that "additional hospitalization and treatment will tend to lessen the period of disability of the claimant"? If not, when the North Carolina Industrial Commission finds that the claimant is permanently totally disabled as result of injury by accident arising out of and in the course of her employment may it in its discretion award medical, surgical, hospital or other treatment for an additional period of time?

Consideration of pertinent sections of the North Carolina Workmen's Compensation Act under proper construction points to negative answers to these determinative questions.

Section 25 of the act as amended provides: "Medical, surgical, hospital, or other treatment, including medical and surgical supplies as may reasonably be required, for a period not exceeding ten weeks from date of injury to effect a cure or give relief, and for such additional time as in the judgment of the Commission will tend to lessen the period of disability, . . . shall be provided by the employer. In case of a controversy arising between employer and employee relative to the continuance of medical, surgical, hospital or other treatment, the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary . . ." Public Laws 1929, ch. 120, sec. 25, as amended by Public Laws 1931, ch. 274, sec. 4.

As we read and construe the wording of the act it is plain that in order to effect a cure or give relief, medical, surgical, hospital or other treatment shall be provided by the employer for a period of ten weeks. But such treatment may not be required for additional time unless it "will tend to lessen the period of disability." Disability, as used in the act, means "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Public Laws 1929, ch. 120, sec. 2, subsec. (i). Whether additional hospital treatment will tend to lessen the period of disability is a question of fact to be ascertained by the Industrial Commission upon competent evidence. Until and unless such finding be made, the Commission is without jurisdiction to make an award for treatment for an additional period.

1. Reverting to the first question, it is appropriate to refer to the evidence before the Commission. Drs. Crispell, Leinbach and Vernon each, after reviewing the history of the case, and treatment administered, expresses his opinion of the present condition of claimant and a prognosis as to her future condition.

Dr. Crispell said in part: "For all intents and purposes, I think that the course and prognosis are those of schizophrenia or dementia praecox. . . . While there may be a little tendency towards remission at times, I do not think the patient will ever be mentally normal or able to live outside of an institution, and the likelihood is that the condition will be progressive. Furthermore, there is no specific treatment and there remains nothing but custodial care. . . . In spite of the fact that everything possible has been done, she has a malignant psychotic condition which will incapacitate her, probably permanently, and this is beyond any treatment, and in which she will need permanent institutional and psychiatric care."

MILLWOOD *v.* COTTON MILLS.

In his report, Dr. Leinbach stated in part: "It is implied only that the course of her psychosis is, in my opinion, beyond human control and can be influenced only in minor features by treatment of any kind. It appears to me also that her treatment in the future will be largely custodial. . . ." On examination before the hearing Commissioner, Dr. Leinbach testified: "I have an opinion satisfactory to myself that further medical treatment will not tend to lessen the period of her disability. . . . I saw this patient January 30th. Her condition at that time was just as bad as it could be. She became worse, progressively worse, during her treatment in the Charlotte Sanatorium, and at the time I saw her eighteen months later, January 30, her condition was just as bad as it was the day she was dismissed from the Sanatorium. . . . I don't think hospitalization would tend to give relief. I don't think her trend is to recover or improve by being in the hospital at all."

Dr. Vernon reported in part: "A mental disorder and disability of three years standing following an accident is probably permanent and not likely to be influenced by any treatment. . . . The mental reactions of Mrs. Millwood present a picture with close marks of the mental disease known as dementia praecox. It is my opinion that we can so call it at this time. What has caused it I do not know. . . . As to treatment, no specific treatment that has been tried and tested is known to materially influence the course of dementia praecox. Custodial care may improve habits and prolong life; and in the course of time the patient may come to a more or less comfortable adjustment with surroundings; but the disease known as dementia praecox is beyond control and gradual deterioration is the usual course. Such a case as Mrs. Millwood will probably spend her life in a mental hospital."

On examination before the hearing Commissioner, Dr. Vernon testified, in part: "I think custodial care of the patient is necessary . . ." Then in response to a direct question as to whether anything medically, surgically, or of any nature while in his institution would effect a cure or give relief or tend to lessen the period of disability, the doctor said in part: "My reply would have to be that the best efforts of hospitalization and care would certainly tend to give her the best chance. By that I wouldn't mean that I had full assurance or any reason to think that she would necessarily recover. . . . Right along she might regress, deteriorate while doing all these things. Nothing that is any assurance or certainly medically that I know of could be given Mrs. Millwood which could cure her present mental condition. I am inclined to think I can treat her, which treatment would tend to lessen her disability . . ." And, finally, in response to the question: "Most of us subscribe to the theory that as long as there is life there is hope?" he replied: "Yes, sir, and it is obvious that the person needs training or

skillful nursing or care. It is not in the sense of medical or surgical care. Everything has to be done for her, every sanitary thing."

From this evidence taken in the most favorable light to plaintiff as "everything has to be done for her, every sanitary thing," treatment would tend to lessen her disability. But there is no evidence that treatment will tend to lessen *the period* of her disability which the Commission finds. To the contrary, on 30 March, 1938, the Commission awarded continuance of hospitalization upon finding that plaintiff "sustained an injury by accident arising out of and in the course of her employment, resulting in permanent total disability." Upon that finding, the treatment terminates and the act provides the compensation.

2. That part of section 29 of the act providing that "in case of a controversy arising between the employer and employee relative to continuance of medical, surgical, hospital or *other treatment*, the Commission may order further treatment as may *in the discretion* of the Commission be necessary" must be read in connection with the sentence just preceding, providing for such treatment. When so considered, the exercise of discretion for treatment beyond the ten weeks period comes into play only upon proper finding by the Commission that such additional treatment "will tend to lessen *the period* of disability."

The record in the present case reveals that "in spite of the fact that everything possible has been done" for claimant since her injury on 21 February, 1936, she is now suffering from an incurable mental disease, a permanent total disability. What care and treatment is now required to be provided for her under the provisions of the Workmen's Compensation Act is not a matter of public policy except as therein declared. In that act the Legislature has prescribed and limited the benefits to and the burdens upon those subject to its provisions. It is the duty of the courts to declare the law as written, and not to make it. *S. v. Whitehurst,* 212 N. C., 300, 193 S. E., 657; *Borders v. Cline,* 212 N. C., 472; 193 S. E., 826, and cases there cited.

Attention is called to Rule 19 of the Rules of Practice in the Supreme Court, 213 N. C., 816, with respect to the arrangement of the contents of the record and of the index. The index to record on this appeal is made up almost entirely of alphabetical designation of exhibits. This is not in compliance with the requirements of the rule, and is virtually no index. Hence, it has been necessary in the main to search through the ninety pages to find any particular document. See *Kearnes v. Gray,* 173 N. C., 717, 92 S. E., 149.

Likewise, attention is called to the fact that in brief of appellant reference is made to exhibits in the record without page designation. .

The judgment below is

Reversed.