ETHEL M. BARBER, ADMINISTRATRIX OF THE ESTATE OF GUY A. BARBER, v. CLYDE E. MINGES, RICHARD B. MINGES, L. DEAN MINGES, MRS. L. L. MINGES AND MRS. MARY MINGES GRIFFIN, INDIVIDUALLY AND TRADING AS SALISBURY PEPSI-COLA BOTTLING COMPANY.

(Filed 2 June, 1943.)

**1. Master and Servant §§ 37, 40e—**

The N. C. Workmen's Compensation Act, C. S., 8081 (h), *et seq.*, deals with the incidents and risks of the contract of employment, in which is included the negligence of the employer in that relation. It has no application outside the field of industrial accident; and does not intend, by its general terms, to take away common law or other rights which pertain to the parties as members of the general public, disconnected with the employment.

**2. Master and Servant § 37—**

Expressions in the N. C. Workmen's Compensation Act, C. S., 8081 (r), regarding the surrender of the right to maintain common law or statutory actions against the employer, are not absolute. They must be construed within the framework of the Act, and as qualified by its subject and purposes.

**3. Master and Servant §§ 40b, 40f—**

In dealing with certain unscheduled occupational diseases, this Court has held common law actions to be excluded by the Workmen's Compensation Act; but in these cases the condition admittedly and allegedly arose out of the employment.

**4. Master and Servant § 46a—**

    The Industrial Commission is not a court of general jurisdiction. It can have no implied jurisdiction beyond the presumption that it is clothed with power to perform the duties required of it by the law entrusted to it for administration.

**5. Master and Servant § 40f—**

    The relation of master and servant is not invoked when the employee attends a good will picnic at the invitation of the employer, where the employee did no work and was not paid for attendance, nor penalized for nonattendance, nor ordered to go.

**6. Master and Servant § 47—**

    C. S., 8081 (ff) (b), does not require the plaintiff to file a claim with the Industrial Commission, as a court of first instance, before bringing an action in the Superior Court.

STACY, C. J., concurring in result.
DENNY, J., joins in concurring opinion.
BARNHILL, J., dissenting.
WINBORNE, J., concurs in dissenting opinion.

APPEAL by plaintiff from *Rousseau, J.,* at March Regular Term, 1943, of ROWAN. Reversed.

The plaintiff administratrix brought this action to recover damages for the injury and death of her intestate, Guy A. Barber, which she alleges was caused by the negligence of defendants.

The defendants were engaged in bottling and distributing soft drinks, with an office or plant at Salisbury, and Barber was employed by them in that business. Pursuant to a custom of providing an annual outing for employees and their families in the promotion of good will, the defendants, through an agent, Sloop, organized and conducted a fishing trip to South Carolina, which Barber and members of his family attended at the invitation of the defendants. Part of the trip was made by a gasoline driven boat down Little River, South Carolina, and to the fishing grounds off the coast. There, in an attempt to start the engine by priming with gasoline poured from bottles, the boat was set on fire by an explosion of gasoline vapor, and plaintiff's intestate died as a result of burns he received.

Various acts of negligence are attributed to Sloop in the complaint, including the hiring of an unsafe boat, permitting open cans and bottles of gasoline to be used, from which the air in the boat became saturated with gasoline vapor and exploded by a spark from the engine.

The defendants moved to dismiss the action upon the ground that the North Carolina Industrial Commission had exclusive jurisdiction of the controversy under the Workmen's Compensation Act, chapter 120, Public Laws of 1929, as amended by chapter 123, Public Laws of 1935,

Michie's Code of 1939, sec. 8081 (h), *et seq.* The court below dismissed the action on that ground, and plaintiff appealed.

*J. Frank Spruill and Stahle Linn for plaintiff, appellant.*

*Hayden Clement and Battle, Winslow & Merrell for defendants, appellees.*

SEAWELL, J. On the facts alleged in the complaint, is plaintiff's demand within the exclusive jurisdiction of the Industrial Commission under the terms of the Workmen's Compensation Act, and her right to maintain an action under C. S., 160, for the wrongful death of her intestate defeated?

It would seem that the answer should be in the negative unless the facts alleged, or reasonable inferences from them, show that the relation of master and servant existed between the parties, at the time, and with respect to the transaction resulting in the injury and death; or, in other words, that the negligence causing the death was incident to the employment. That, simply stated, is the position of the plaintiff. She contends that the complaint, in its factual statements, negatives these essential conditions of jurisdiction under the Act. The position of the defendants is expressed in their brief as follows:

"The statute, broad and comprehensive in its terms, excludes all remedies other than through the Industrial Commission, whether plaintiff be invitee or licensee; whether he be on the job, or off the job; whether the accident arises out of employment, or *independently of employment.* All common law remedies of an employee are merged into the remedy under the Act, and if the plaintiff chose not to proceed in the forum provided for her, she is out of court."

Carried to its logical extreme, this would confer immunity from liability upon an employer who inflicts a negligent injury on an employee while the latter is not engaged in any activity of his employment and is far from the scene of his duties, while he is on the way to the grocer or to church, or wherever he has the right to be in the pursuit of his own affairs. The contention is too sweeping to merit serious attention except for the fact that counsel for defense cite certain decisions of this Court which have been recognized as having that significance. *Pilley v. Cotton Mills,* 201 N. C., 426, 160 S. E., 479; *Francis v. Wood Turning Co.,* 208 N. C., 517, 181 S. E., 628. We will examine these cases later.

The major argument here, on both sides, was addressed to this issue, and it constitutes almost the entire subject matter of the briefs. The condition in which the subject is left in the *Pilley* and *Francis cases, supra,* demands attention to that phase of the legal controversy, however obvious the principles governing the jurisdiction may now appear.

I. Section 11 of the Act reads as follows:

"The rights and remedies herein granted to an employee where he and his employer have accepted the provisions of this act, respectively, *to pay and accept compensation on account of personal injury or death by accident,* shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, as against his employer at common law or otherwise, *on account of such injury, loss of service, or death."* Public Laws of 1929, chapter 120, section 11; Michie's Code, 1939, sec. 8081 (r).

The incidence of the law is on the status created by the contract of employment. It deals with the incidents and risks of that employment, in which concededly is included the negligence of the employer in that relation. It has no application outside the field of industrial accident; and does not intend, by its general terms, to take away common law or other rights which pertain to the parties only as members of the general public, disconnected with the employment. "The relation of master and servant and their mutual rights and liabilities is the primary concern of the compensation acts. Unless the relationship of employer and employee exists, the acts have no bearing on a claim for personal injury damages." Schneider, Vol. 1, p. 3, sec. 2. Expressions in sec. 11 regarding the surrender of the right to maintain common law or statutory actions against the employer are not absolute—not words of universal import, making no contact with time, place or circumstance. They must be construed within the framework of the Act, and as qualified by its subject and purposes.

The primary purpose of legislation of this kind is to compel industry to take care of its own wreckage. It is said to be acceptable to both employer and employee, because it reduces the cost of settlement and avoids delay. To the employee, it means a certainty of some sort of compensation for an injury received in the course of business; and to the employer, it reduces unpredictability of loss and puts it on an actuarial basis, permitting it to be treated as "overhead," absorbed in the sales price, and thus transferred to that universal beast of economic burden, the consumer. *Allen v. State,* 160 N. Y. Supp., 85; *Village of Kiel v. Industrial Commission* (Wis.), 158 N. W., 68. It is said to be humanitarian and economical as opposed to wasteful in the conduct of the enterprise, and is referred to the propriety of keeping loss by accident incidental to employment chargeable to the industry where it occurs. *Kennerson v. Thomas Towboat Co.,* 89 Conn., 367, 94 A., 372. It is called "an economic system of trade risk." "Losses incident to industrial pursuits are like wrongs and breakage of machinery—a cost of production." *Mackin v. Detroit-Limken Axle Co.,* 187 Mich., 8, 153 N. W., 49; *Village of Kiel v. Industrial Commission, supra.* It should be charged against

the industry responsible for the injury. *Klawinski v. Lake Shore &
N. S. Ry. Co.,* 185 Mich., 643, 152 N. W., 213; Schneider, Workmen's
Compensation Law, Permanent Edition, s. 1.

The Industrial Commission is not a court of general jurisdiction. It
can have no implied jurisdiction beyond the presumption that it is
clothed with power to perform the duties required of it by the law
entrusted to it for administration. As is often the case in legislation
of this type, the more definitive expressions of jurisdiction are found in
the procedural features of the law. See sec. 1, subsection (f), Michie's
Code of 1939, sec. 8081 (i) (f). In most jurisdictions having provi-
sions in the law comparable to sec. 11—many of them are identical—the
courts have felt constrained to construe the law as exclusive only with
respect to injuries for which compensation is provided and not to exclude
common law actions where no such provision is made. *Barrencotto v.
Cocker Saw Co.,* 266 N. Y., 139, 194 N. E., 61; *Boyer v. Crescent Paper
Box Factory.* 143 La., 368, 78 So., 596; *Donnely v. Minneapolis Mfg.
Co.,* 161 Minn., 240, 201 N. W., 305; *Triff v. National Bronze & Alum-
inum Foundry Co.,* 135 Ohio St., 191, 20 N. E. (2d), 232, 121 A. L. R.,
1131, overruling *Zajachuck v. Willard Storage Battery Co.,* 106 Ohio
St., 538, 140 N. E., 405, and *Mabley & C. Co. v. Lee,* 129 Ohio St., 69,
193 N. E., 745, 100 A. L. R., 511; *Covington v. Berkeley Granite Corp.,*
182 Ga., 235, 184 S. E., 871. See annotations 100 A. L. R., 519, and
121 A. L. R., 1143. Our Court has not observed this rule; but dealing
with certain unscheduled occupational diseases, has held common law
actions to be excluded, although the Act makes no provision for compen-
sation. *Lee v. American Enka Corporation,* 212 N. C., 455, 193 S. E.,
809; *Murphy v. American Enka Corporation,* 213 N. C., 218, 195 S. E.,
536. But in these cases the condition admittedly and allegedly arose out
of the employment. The cases do not support defendants' contention.

In *Francis v. Wood Turning Co.,* 208 N. C., 517, 181 S. E., 628, upon
which the defendants mainly rely, the decision, as the opinion states, "is
affirmed on the authority of *Pilley v. Cotton Mills* (201 N. C., 426, 160
S. E., 479)," and it is said that the facts in that case are identical "in
the instant case." But the two cases are similar only in legal history—
in the fact that before a common law action was resorted to, the claims
were presented to the Industrial Commission, compensation denied, and
no appeal taken. In fact, as we shall presently see, there was one appeal
taken after compensation was denied in the *Francis case, supra,* but the
facts in these cases are far from identical.

The facts in the *Pilley case, supra,* are not stated in the report. They
may be found in I. C. File 22050, Docket No. 43. Pilley fell while on
duty and in the course of his employment as a watchman in defendant's

cotton mill, but was denied compensation because it was found that he collapsed as a result of a combination of diseases from which he had suffered for a long while. The complaint in the case brought in the Superior Court substantially states that he received his injury during the course of employment and through an accident arising out of it, and the demurrer in this Court points out the paragraph of the complaint so stating. Bound Records and Briefs, Fall Term 1931, 5, No. 172. As distinguished and resting upon that ground, the result reached in the *Pilley case, supra,* is correct.

The controversy in the *Francis case, supra,* came here on appeal twice—*Francis v. Wood Turning Co.,* 204 N. C., 701, and *Francis v. Wood Turning Co.,* 208 N. C., 517, *supra.* Too tedious to repeat here, the history of the case and factual background not found in the later report may be gotten from the first and fuller report in 204 N. C., 701, *et seq.*

It is sufficient to say that the case came here on plaintiff's appeal from a judgment in the court below sustaining a demurrer grounded on the fact that jurisdiction had been sustained on conflicting evidence theretofore, and the law as laid down in the former appeal had become the law of the case; and the further plea that, as plaintiff had resorted to the Industrial Commission and had not appealed from an adverse decision, under the judgment of that tribunal the matter was *res judicata* (Records and Briefs, Fall Term, 1935, 20, No. 17). Upon the facts and procedural history of the case, the result reached in the *Francis case, supra,* might be sustained. In neither the *Pilley case, supra,* nor the *Francis case, supra,* was the question presented here discussed. The opinions, seated alone upon the facts reported, are too broad in their implications.

II. Under the realistic view our Court has always taken of the contract of employment, we cannot hold that the master-servant relation is evoked by the social gesture when the employee attends a good will picnic at the invitation of the employer. There are cases guardedly so holding under the circumstances of the particular case, it is true. *Stakonis v. United Advertising Corp.,* 110 Conn., 384, 148 A., 334; *Conklin v. Kansas City Public Serv. Co.,* 226 Mo. Ap., 309, 41 S. E. (2d), 608; *Sinclair v. Wallach Laundry,* 228 N. Y. S., 686. In other cases it has been denied: *F. Becker Asphaltum Roofing Co. v. Industrial Commission,* 333 Ill., 340, 164 N. E., 668; *Maeda v. Department of Labor and Industry,* 192 Wash., 87, 72 P. (2d), 1034. In the *Stakonis case, supra,* it was noted that the employee was under direct order to attend the picnic, with a penalty for disobedience if he did not; but by *dictum* it is said that where there is a mere invitation to enjoy the hospitality of the employer, there would be no direct relation between the outing and the employment. Furthermore, some weight is given to the fact

that Stakonis was to be paid for the day's attendance. "It may fairly be said also that acting under orders of his employer, he was fulfilling one of the duties of his employment, or at least he was doing something which this defendant had annexed to the employment and made incidental to it."

In *Hildebrand v. McDowell Furniture Co.*, 212 N. C., 100, 193 S. E., 294, the employee was killed while returning on Sunday from a furniture exposition which he had attended with the superintendent of the factory merely for the pleasure of the trip, and did not work for his employer while on the trip. In that case, defining an accident arising in the course of the employment, the Court repeats the definition found in *Conrad v. Foundry Co.*, 198 N. C., 723, 725, as one which "occurs in the course of the employment and as the result of a risk involved in the employment, or incident to it, or to conditions under which it is required to be performed"; and finds that the phrase out of and in the course of employment "embraces only those accidents which happen to a servant while he is engaged in the discharge of some function or duty which he is authorized to undertake and which is calculated to further, directly or indirectly, the master's business." But compensation was denied on the ground that the activity of the employee had no relation to any duty he owed the master and did not tend to further his business. The Court said: "He did not work for his employer on the trip, and he was not compelled to go."

In *Perdue v. Board of Equalization*, 205 N. C., 730, 172 S. E., 396, this Court affirmed an award made to the dependents of a teacher in the graded schools at Statesville, who was killed while coaching at a football game away from the school in which he was employed. And in *Callihan v. Board of Education*, 222 N. C., 381, the Court affirmed an award made by the Industrial Commission to a teacher of vocational subjects in the public schools, who at the time of his injury was on the way to attend a monthly meeting of others engaged in like work. However, in each of these cases the evidence was sufficient to connect the activities definitely with the contract of employment.

In each case where compensation was denied, it was on the principle that the facts upon which it was claimed had no connection with the employment and, therefore, the master-servant relation which is necessary to the application of the Workmen's Compensation Act is absent. To this relation alone, is compensability an incident?

The outing sponsored by the employers in the case at bar occurred on Sunday—(see *Ridout v. Rose's Stores, Inc.*, 205 N. C., 423, 171 S. E., 642)—the employee was not paid for attendance, nor penalized for non-attendance, nor ordered to go, but was merely invited. He did no work and there is no suggestion that on this occasion he was under the control and direction of the employer in any respect. He owed no duty to the

employer or to other invited guests, or to the occasion itself, except that which was involved in civility and the observance of the social amenities. It seems a necessary conclusion that the Workmen's Compensation Act has no relation to the circumstances of his case.

The amendment made by ch. 449, Public Laws of 1933, found in Michie's Code of 1939 as Sec. 8081 (ff) (b), does not require the plaintiff to file her claim with the Industrial Commission, as a court of first instance, before bringing her action in the Superior Court. The section was intended to defer the time in which action in the proper court might be brought when mistaken resort to the Commission has been made. Such other implications as it may have are not favorable to the defendants on the question of exclusiveness of the jurisdiction.

We have nothing to do with whether the plaintiff can recover in her present action. We only say that the facts of the case as alleged in the complaint do not bring it within the jurisdiction of the Industrial Commission.

The judgment of the court below dismissing plaintiff's action is

Reversed.

STACY, C. J., concurring in result: The complaint states no claim for compensation within the Workmen's Compensation Act. *Wilson v. Mooresville*, 222 N. C., 283; *Hildebrand v. Furniture Co.*, 212 N. C., 100, 193 S. E., 294. And while the allegation in respect of employer-employee relationship might have warranted the Industrial Commission in so adjudging, had claim for compensation been filed with it, which accordingly would have tolled the provisions of C. S., 160 until final judgment by virtue of Chap. 449, Sec. 2, Public Laws 1933 (Michie's Code 8081 [ff]), still the jurisdiction of the Superior Court attaches in the first instance because of the character of the cause of action alleged. *Okla. Steel Cast. Co. v. Banks*, 181 Okla., 503, 74 P. (2d), 1168. The commercial, occupational or professional status of employer-employee relationship which is covered exclusively by the Workmen's Compensation Act was lacking at the time of and in respect to the transaction out of which plaintiff's intestate's injury arose and his death ensued. *Ridout v. Rose's Stores, Inc.*, 205 N. C., 423, 171 S. E., 642; *McCune v. Mfg. Co.*, 217 N. C., 351, 8 S. E. (2d), 219. See *Liverman v. Cline*, 212 N. C., 43, 192 S. E., 849. The relation was after the similitude of invitor and invitee or more nearly that of host and guest. *White v. McCabe*, 208 N. C., 301, 180 S. E., 704; *Norfleet v. Hall*, 204 N. C., 573, 169 S. E., 143. The scene is outside the field of industrial employment and the coverage of the Workmen's Compensation Act. *Hollowell*

---

---

*v. Dept. Con. and Devp.,* 206 N. C., 206, 173 S. E., 603. This defeats the jurisdictional challenge.

DENNY, J., joins in concurring opinion.

BARNHILL, J., dissenting: While, as now drafted, the majority opinion correctly states the question presented for decision, I am still unable to concur in the conclusion reached.

The case comes here on demurrer. The only question raised by the demurrer is that of jurisdiction. If it appears from the pleadings that the negligence alleged in the complaint had no relation to the employment or to the business with which it was concerned the Superior Court had jurisdiction and the judgment should be reversed. Hence, the one and only question debated in the briefs and presented to us for decision is this: Does the Industrial Commission have jurisdiction of the cause of action set out in the complaint; that is, in effect, does it appear from the pleadings that the master-servant relation existed at the time of and in respect to the alleged injury and death?

In *Reaves v. Mill Co.,* 216 N. C., 462, 5 S. E. (2d), 305, it is said that insofar as it depends upon the statute alone the jurisdiction of the Industrial Commission attaches (a) if the contract of employment was made in this State; (b) if the employer's place of business is in this State; and (c) if the residence of the employee is in this State. A practical application of the statute requires the addition of one other requisite: the employer-employee relation must exist at the time of and in respect to the injury or death or to the transaction out of which such injury or death arose. On this we now seem to be in agreement.

The relevant provision of the statute is as follows: "The rights and remedies herein granted to an employee where he and his employer have accepted the provisions of this Act, respectively, *to pay and accept* compensation on account of personal *injury or death* by accident, *shall exclude all other rights and remedies* of such employee, his personal representative, . . . as against his employer *at common law or otherwise,* on account of such injury, loss of service, or death." Sec. 11, Ch. 120, P. L., 1929. There is no limitation or qualification here. The sole requisite is that of the employer-employee relation in respect to the transaction out of which the injury arose. That this is the criterion of jurisdiction is the clear import of the statute. If this relation exists all other remedies are excluded. There is no middle ground and no concurrent jurisdiction. The jurisdiction of the Commission, whatever it may be, is exclusive.

When the employer-employee relation exists the employer is liable only to the extent and *in the manner specified* in the Act. Sec. 10.

Such rights and remedies are exclusive, sec. 11, and the Industrial Commission alone has jurisdiction. *Hedgepeth v. Casualty Co.,* 209 N. C., 45, 182 S. E., 704; *Pilley v. Cotton Mills,* 201 N. C., 426, 160 S. E., 479; *Tscheiller v. Weaving Co.,* 214 N. C., 449, 199 S. E., 623; *Cooke v. Gillis,* 218 N. C., 726, 12 S. E. (2d), 250.

It is admitted in the pleadings that the relation of employer and employee, as those terms are defined in the Act, existed between the deceased employee and the defendant employer. Did it exist at the time of and in relation to the injury and death or to the transaction out of which such injury and death arose? If the pleadings so disclose the judgment should be affirmed.

. It is alleged in the complaint that it had become the policy or custom of the defendants to provide an annual outing or picnic for their employees "said outing or picnic being for the purpose of promoting employer-employee relations"; that pursuant to said policy an arrangement was made for an outing or picnic at Southport, N. C., for a group of its employees; that the plaintiff's intestate was included in said group at the solicitation of the defendants' manager; that he went as a member of said group; that said group of employees, including plaintiff's intestate, *was under the direction and supervision of said manager* and all expenses of said employees were being paid by the defendants; that the manager chartered the "Nightingale" with its crew for the purpose of taking said employees, including plaintiff's intestate, out to the fishing grounds in the Atlantic Ocean; and that the plaintiff's intestate and the other employees in the group boarded the boat *at the direction of* said manager.

. The employer, as such, extended the invitation. The plaintiff's intestate, as employee, accepted. The trip was for the benefit of the business of the employer. The "Nightingale" was, for the time being, the premises of the employer. The employee was on the premises *at the direction* of the manager of the employer and to participate in promoting the best interest of his master. The annual picnic had become a custom—an incident of the business—for the purpose of promoting employer-employee relations, a phase of business vitally affecting its successful operation too often neglected or completely ignored by business management. Here, at least, we have employers who recognize that their employees are more than mere chattels and that upon their good will and friendship the success of the business in which they are all engaged, some as employers and some as employees, very largely depends. I, for one, am unwilling to take the position that this enterprise, prompted by this worthy motive, had no relation to the employment or to the business with which it was concerned. Instead, I insist that it related directly and substantially to the business and to the best

interest of both the employer and the employee. It tended to promote the business of the employer and to give assurance of continuing and profitable employment to the employees. In this both were interested. Surely, then, the employer-employee relation existed in respect to this transaction.

That the deceased received nothing other than entertainment in return for his time; that he performed no duty of his employment; that the injury did not arise out of or in the course of the employment; and that the risk was not incident to the employment are all facts bearing only upon compensability. They do not control jurisdiction.

To hold otherwise is but to hold that the Commission has jurisdiction only when the claim is compensable and every non-compensable case must be dismissed for want of jurisdiction. Likewise, it would require us to overrule a long line of decisions.

Nor do I agree that, in order to sustain the jurisdiction of the Industrial Commission in this case, it is necessary for us to take the view that where a contract of employment exists between parties for any purpose whatever, then by operation of the Act, all negligent injury to the employee of whatever nature, however disconnected with the employment and wherever or under whatever circumstances consummated, is a matter exclusively within the jurisdiction of the Industrial Commission. This, it is true, is apparently the view advanced by defendants. We are not required, however, to adopt all their argument in order to sustain the contention that upon this record it affirmatively appears that the Industrial Commission has jurisdiction of plaintiff's claim.

That the injury did not arise out of or in the course of employment and that it resulted from a risk which was not incident to the employment are by no means determinative of jurisdiction. The existence or non-existence of these facts is to be ascertained after jurisdiction is assumed and their non-existence does not defeat the jurisdiction of the Commission. The existence of the relation is all that is required. *Hildebrand v. Furniture Co.,* 212 N. C., 100, 193 S. E., 294; *Lockey v. Cohen, Goldman & Co.,* 213 N. C., 356, 196 S. E., 342; *Davis v. Mecklenburg County,* 214 N. C., 469, 199 S. E., 604; *Dependents of Phifer v. Dairy,* 200 N. C., 65, 156 S. E., 147; *Bray v. Weatherly & Co.,* 203 N. C., 160, 165 S. E., 332 and cases cited; *Lassiter v. Tel. Co.,* 215 N. C., 227, 1 S. E. (2d), 542; *Wilson v. Mooresville,* 222 N. C., 283; *Bryan v. T. A. Loving Co.,* 222 N. C., 724; *Davis v. Veneer Corp.,* 200 N. C., 263, 156 S. E., 859; *Francis v. Wood Turning Co.,* 204 N. C., 701, 169 S. E., 654; *Beavers v. Power Co.,* 205 N. C., 34, 169 S. E., 825; *Smith v. Machine Co.,* 206 N. C., 97, 172 S. E., 880; *Porter v. Noland Co.,* 215 N. C., 724, 2 S. E. (2d), 853.

In the *Hildebrand case, supra,* the evidence tended to show that the defendant furniture manufacturer entered an exhibit in an exposition of finished furniture; that the exposition was solely to sell furniture to retailers and could in no way help defendant's employees as to methods of manufacture or improve their usefulness to the defendant; that the foreman of the glue room, along with other foremen of the plant, was asked to go; that employees who elected to go were not paid for time and were given no orders while on the trip, but that part of their expenses was paid by defendant, and plaintiff's intestate was requested to go after the end of the work week as a matter of courtesy as an "outing" or pleasure trip. Claimant's intestate was killed in an automobile accident while he was driving the car of his fellow employee back to the town in which the defendant's plant was located.

In the *Smith case, supra,* the employee left his place of employment, went to a store for his own convenience and was killed when two armed men undertook to rob the merchant.

In the *Porter case, supra,* the employee used his employer's car for a week-end pleasure trip and was injured on the return trip.

In the *Beaver case, supra,* a private photographer was taking a group picture of the night shift of the mill employees on the premises of the employer. The employer had no interest in having the picture taken; it was not for use in the business; it included only those who voluntarily wished to appear in the group; the photographer alone intended to profit; the employees had not begun their work. The bench on which claimant and others were sitting collapsed, injuring claimant.

Without undertaking to analyze the other cited cases it is sufficient to say that the facts were similar in that in each case it affirmatively appeared that at the time of the injury the employee was not about his master's business and the injury resulted from a risk which was not incident to his work. In each case cited above the Court sustained the jurisdiction of the Industrial Commission.

But it may be said that in none of these cases did the Court make any reference to jurisdiction. On this point, silence is the strength of the decisions.

Our jurisdiction is derivative. If the inferior court is without jurisdiction we have none, and it has been the consistent policy of this Court to dismiss on motion or *ex mero motu* so soon as a defect in jurisdiction is made to appear. "The instant that the court perceives that it is exercising, or is about to exercise, a forbidden or ungranted power, it ought to stay its action; and, if it does not, such action is, in law, a nullity. *Burroughs v. McNeill,* 22 N. C., 297; *Washington County v. Land Co.,* 222 N. C., 637; *McCune v. Mfg. Co.,* 217 N. C., 351, 8 S. E.

(2d), 219; *Shepard v. Leonard, ante,* p. 110. Hence, when we considered these and the many other cases of like import which have been before this Court on the merits we, of necessity, sustained the jurisdiction of the Industrial Commission.

If we were correct in so doing, particularly in *Hildebrand v. Furniture Co., supra; Porter v. Noland Co., supra,* and *Beaver v. Power Co., supra,* when nothing more than the relationship and an injury appeared, I cannot perceive how we can escape the same conclusion here.

Sec. 2, Ch. 449, P. L., 1933, to my mind, evidences an intent on the part of the Legislature that an employee shall test his rights first before the Industrial Commission. Otherwise, a converse provision would have been made so that if he proceeds in the Superior Court and loses he will then have time to present his claim to the Commission. He is protected if he fails to establish the employer-employee relation before the commission but he has no other recourse if he, in the beginning, seeks to evade the provisions of the Act. Ch. 120, P. L., 1929.

In any event, this statute rebuts any suggestion that the conclusion that the Industrial Commission has jurisdiction creates a "No Man's Land" in respect to jurisdiction of claims of employees for injuries shown to have no relation to the employment. In the event the commission finds that the employer-employee relation did not exist at the time of and in respect to the injury or to the transaction out of which such injury arose the doors of the Superior Court are still open to the employee. He can then present his cause in that forum.

The case comes to this: plaintiff is seeking now to assert a right her intestate surrendered in exchange for the benefits accruing to him under the Act. She should be required to present her cause in the tribunal created by the Act.

Since this dissent was tendered then re-drafted to meet changes made in the majority opinion there have been additional changes, both in substance and in form, in the majority opinion. "Nor is this all. Since writing the above in answer to the theory formerly advanced by the majority, a concurring opinion has been filed herein. The same procedure was followed in the case of *Evans v. Rockingham Homes, Inc.,* 220 N. C., 253. Here, as there, the concurrence gives added significance to the dissent." *Stacy, C. J.,* in dissenting opinion in *Williams v. McLean,* 221 N. C., 228, at p. 231, 19 S. E. (2d), 867.

Due to these circumstances further change in the form of this dissent may be in order. Be that as it may, my one and only object is to express my views on the law of the case—now in part adopted by the majority. This I have done. I am content to let it stand as written. However, it is necessary for me to add something in reply.

In *Hildebrand v. Furniture Co., supra,* an award was made. This Court reversed for the reason that the evidence failed to disclose that the injury and death arose out of and in the course of employment. It is so stated in the first paragraph of the opinion. This is all I am capable of reading into the decision.

On the first appeal in the *Francis case,* 204 N. C., 701, 169 S. E., 654, this Court specifically held that the employer-employee relation existed and the cause was remanded. The Commission then denied compensation. Francis sued in the Superior Court and a demurrer was sustained. It is said that we affirmed on the grounds that the judgment of the Industrial Commission was *res judicata.* Suffice it to say that if the Commission had no jurisdiction, no order it made could be *res judicata.* Such order would be a nullity and a nullity decides nothing.

But we may write the *Hildebrand* and the *Francis cases* out of the books and there still remain numerous cases to the same effect. I have read with care the cases cited in the majority and the concurring opinion, as well as those cited here. So far as I can find we have only two decisions in which the cause was decided adversely to the claimant for the reason that the employer-employee relation was not shown to exist at the time and in respect to the injury. The two exceptions are *Ridout v. Rose's Stores, Inc.,* 205 N. C., 423, 171 S. E., 642, and *Hollowell v. Dept. of Conservation and Development,* 206 N. C., 206, 173 S. E., 603. Each is factually distinguishable from the instant case.

We have decided, in cases originating in the Superior Court, that the employer-employee relation gives exclusive jurisdiction to the Industrial Commission even though the injury did not arise out of or in the course of the employment. *McCune v. Mfg. Co., supra; Pilley v. Cotton Mills, supra; McNeely v. Asbestos Co.,* 206 N. C., 568, 174 S. E., 509; *Francis v. Wood Turning Co., supra; Lee v. American Enka Corp.,* 212 N. C., 455, 193 S. E., 809; *Murphy v. American Enka Corp.,* 213 N. C., 218, 195 S. E., 536.

The substance of these decisions is epitomized in the syllabus in the *Lee case* as follows: "Even though the injury is not compensable under the Compensation Act the Superior Court properly dismissed the action, since plaintiff, by accepting the provisions of the Compensation Act, surrendered his right to maintain an action at common law to recover for an injury caused by the negligence of his employer, and in exchange therefor received the benefit of the employer's assumption of liability for injuries compensable under the Act regardless of negligence."

But now, after much writing on both sides, we must again come to the only real question posed for decision: Does it affirmatively appear from the admissions and the allegations made in the complaint that the employer-employee relation existed at the time of and in respect to the

injury and death of plaintiff's intestate? If so, the judgment should be affirmed. If not, it should be reversed. I vote to affirm.

WINBORNE, J., concurs in dissent.