JAMES CLIFTON PEELER Employee, Plaintiff v. STATE HIGHWAY COMMISSION, SELF-INSURED, Employer, Defendant

No. 7910IC191

(Filed 5 August 1980)

1. **Master and Servant § 75– workers' compensation – permanent partial disability – future medical expenses**

    G.S. 97-29 did not authorize an award requiring defendant employer to pay plaintiff's future medical expenses "so long as it will tend to lessen his period of disability" since the statute entitles a claimant to recover compensation for medical care only where disability is found to be total and permanent, and it had been expressly found that plaintiff suffered a permanent partial disability.

2. **Master and Servant § 75– workers' compensation – future medical expenses – period of disability not lessened**

    The full Industrial Commission properly struck a conclusion by the hearing commissioner that "plaintiff will need additional medical expenses from time to time in the future to lessen his permanent partial disability" and the portion of the award requiring defendant employer to pay plaintiff's future medical expenses "so long as it will tend to lessen his period of disability" where the hearing commissioner's findings of fact showed at most that the future medical treatment is necessary to keep plaintiff's condition from deteriorating and that it will not "tend to lessen the *period* of disability" within the meaning of former G.S. 97-25, *i.e.*, the period of plaintiff's diminished capacity to work.

Judge MARTIN (Robert M.) dissenting.

APPEAL by plaintiff from North Carolina Industrial Commission, Docket G-4623. Opinion and award filed 13 December 1978. Heard in the Court of Appeals 22 October 1979.

Peeler v. Highway Comm.

This claim was filed under the Workers' Compensation Act by plaintiff, an employee of the State Highway Commission, to recover compensation and medical expenses for injuries resulting from an accident arising out of and in the course of his employment when he was run over by a motor grader on 22 October 1979. Defendant-employer admitted liability and entered into an agreement for the payment of compensation for temporary total disability from 30 October 1969 to 22 March 1973.

On 22 March 1978 a hearing was held before Deputy Commissioner C.A. Dandelake. Based on medical reports, the hearing commissioner found that plaintiff sustained an injury by accident arising out of and in the course of his employment which resulted in a 20% permanent partial disability of the back, 28% permanent partial disability of the right leg, and 5% permanent partial disability of the left leg. The hearing commissioner also made the following findings of fact:

(5) As a result of the plaintiff's injuries, plaintiff has the loss of or permanent injury to important external and internal organs or parts of the body for which no compensation is payable under any other subdivision of this section and the Industrial Commission may award proper and equitable compensation not to exceed $5,000 for any one organ which was the rate on October 22, 1969 when plaintiff sustained his serious injuries. That the plaintiff has lost complete use of his bladder and his secondary sexual organs such as the prostate and seminal vesicles. Under the circumstances, this patient will be 100% impotent for the duration of his life. He will require the continued use of an external drainage apparatus because of the necessity to create a urinary diversion above the bladder. That the plaintiff will also have to have continued treatment two times a year for an ileo-loop stomo in the right lower quadrant of the abdomen which will require permanent use of a collection appliance. These are synthetic material which will require repeated replacement and, therefore, will require a necessary replacement periodically to tend to lessen his disability. That a reasonable amount under G.S. 97-31(24) would be $5,000.00 for the 100% loss of plaintiff's

sex life; that a reasonable amount for the loss of bladder and prostate would be $1,861.60; that the plaintiff has other damage to his body but this uses up the total amount plaintiff can receive under the law as of October 22, 1969.

(6) The plaintiff's doctors are also of the opinion that plaintiff will have to be seen regularly at least two times a year as the plaintiff will continue to have disability related to his urinary tract because of the ileo-loop urinary tract infections or may even develop a chronic urinary tract infection which may predispose to calculus or stone formation and may develop certain electrolite imbalances or even progress to renal sufficiency (sic) with associated azotemia and anemia and possible acidosis. In order to avoid this type of complication he will need periodic evaluation to consist of complete blood counts with serum, Bun and Creatinine and Electrolyte determinations. He will also require periodic urinalysis directly from the ileo-loop along with quantitive urine cultures and drug sensitivities if indicated. He should also have periodic x-ray evaluation of the ileo-loop and of the kidneys to determine both anatomic and functional status. That the x-ray procedure be done at yearly intervals and that the urinalysis and cultures and blood studies be done at three to six months intervals. He may need surgical removal of the retained bladder if he continues to have difficulty with fluid accumulations with possible secondary infections in the bladder. That the plaintiff will also continuously wear a long leg waist height support. That all of the above will be required to keep plaintiff's condition from worsening.

The hearing commissioner concluded plaintiff was entitled to compensation for 126 weeks of permanent partial disability at the rate of $46.80, and that plaintiff was entitled to compensation for future medical expenses for treatment "recommended by plaintiff's doctor so long as it will tend to lessen his period of disability."

On appeal by defendant-employer the full Commission struck the deputy commissioner's conclusion of law that "[p]laintiff will need additional medical expense from time to

time in the future to lessen his permanent partial disability"
and that portion of the award ordering defendant to pay future
medical expenses for treatment to lessen the period of disabil-
ity. Plaintiff-employee appeals from the Opinion and Award of
the Full Commission.

*Williams, Willeford, Boger & Grady by Thomas M. Grady for
plaintiff appellant.*

*Ralf F. Haskell, Assistant Attorney General for defendant
appellee.*

PARKER, Judge.

Plaintiff's sole assignment of error is to the action of the full
Commission in striking out the hearing Commissioner's conclu-
sion of law that "[p]laintiff will need additional medical ex-
penses from time to time in the future to lessen his permanent
partial disability" and the portion of the award requiring defend-
ant-employer to pay plaintiff's future medical expenses "so
long as it will tend to lessen [plaintiff's] period of disability."
Under G.S. 97-85, the Industrial Commission, upon review of
the opinion and award of the hearing Commissioner, may recon-
sider the evidence and amend the award, *Lee v. Henderson &
Associates*, 284 N.C. 126, 200 S.E. 2d 32 (1973), and the award of
the full Commission is conclusive and binding as to all questions
of fact if supported by competent evidence. *Vause v. Equipment
Co.*, 233 N.C. 88, 63 S.E. 2d 173 (1951). However, the legal conclu-
sions of the Commission are subject to judicial review. *Jackson
v. Highway Commission*, 272 N.C. 697, 158 S.E. 2d 865 (1968);
*Paving Co. v. Highway Commission*, 258 N.C. 691, 129 S.E. 2d 245
(1963). In the present case, the action of the Commission in
striking the Deputy Commissioner's conclusion on the question
of plaintiff's additional medical expenses was, in effect, a con-
clusion of law, and we review it as such.

[1] In that conclusion, the deputy commissioner cited G.S. 97-
29 as authority for plaintiff's entitlement to medical expenses.
Assuming that the Commission ordered the conclusion stricken
on the ground that G.S. 97-29 did not authorize it, we find that it
acted correctly. That statute entitles a claimant to recover

compensation for medical care only where disability is found to be total and permanent. *See, Perry v. Furniture Co.*, 296 N.C, 88, 249 S.E. 2d 397 (1978); *Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978). In the present case, the deputy commissioner had expressly found that plaintiff had suffered a permanent partial disability.

[2] Disregarding the statutory reference, we next consider whether the conclusion was sufficient under G.S. 97-25 to afford a basis for the award. At the time the injury occurred on 22 October 1969, G.S. 97-25 provided for the award of expenses for medical treatment in pertinent part as follows:

> Medical, surgical, hospital, nursing services, medicines, sick travel, and other treatment including medical and surgical supplies as may reasonably be required, for a period not exceeding ten weeks from date of injury to effect a cure or give relief *and for such additional time as in the judgment of the Commission will tend to lessen the period of disability* ... shall be provided by the employer. (emphasis added)

That statute was amended by 1973 Sess. Laws, c. 520, s. 1 to eliminate the ten-week limitation on treatments which are necessary "to effect a cure or give relief." However, the amendment does not apply to the present case because the injury occurred before its effective date. *See, Arrington v. Engineering Corp.*, 264 N.C. 38, 140 S.E. 2d 759 (1965); *Hartsell v. Thermoid Co.*, 249 N.C. 527, 107 S.E. 2d 115 (1959); *Oaks v. Mills Corp.*, 249 N.C. 285, 106 S.E. 2d 202 (1958); *McCrater v. Engineering Corp.*, 248 N.C. 707, 104 S.E. 2d 858 (1958). Thus, under the statute applicable in the present case, an award of expenses for medical treatment could only be made: (1) where reasonably required to effect a cure or give relief within a ten-week period from the date of injury, and (2) after the ten-week period, where in the judgment of Commission treatment may reasonably be required to tend to lessen the period of disability.

In *Millwood v. Cotton Mills*, 215 N.C. 519, 2 S.E. 2d 560 (1939), the claimant was permanently totally disabled as the result of a compensable head injury which led to serious mental disorder and required that she be committed to custodial hospital care

Peeler v. Highway Comm.

for the remainder of her life. Although there was evidence that this treatment "would tend to lessen her disability," the Supreme Court emphasized that there was no evidence to support a finding that treatment would tend to lessen the *period* of her disability, and, therefore, that the Commission was without jurisdiction to make the award. In a more recent case, *Ashley v. Rent-A-Car Company*, 271 N.C. 76, 155 S.E. 2d 755 (1967), the Court, in an opinion by Branch, J. (now C.J.), held that the permanent character of a disability did not preclude an award for medical treatment where the evidence showed that the claimant had not yet reached maximum improvement and that the treatment would reduce the period of his disability. Implied in the Court's decision in *Ashley, supra*, is that the phrase "lessen the period of disability" as used in G.S. 97-25 is to be interpreted to mean "lessen the period of time of diminution in earnings."

In the present case the Hearing Commissioner's findings were directed to the question whether the medical care would tend to lessen claimant's disability and whether it would be required to keep plaintiff's condition from worsening. The conclusion of law based upon these findings was only to the effect that these expenses will be necessary "to lessen [plaintiff's] permanent partial disability," not that they would tend to lessen the period of disability. Although plaintiff would not be forced to incur these expenses were it not for his work-related injury, we are bound by the wording of the statute as then written and by its judicial interpretation. The conclusion of law, while logically flowing from the findings of fact, simply did not provide a basis upon which an award of medical expenses could be made, and it was properly stricken by the full Commission as mere surplusage. Further, we note that the deputy commissioner's determination of percentage permanent partial disability and his award of compensation thereon effectively precluded him from awarding payment of medical expenses. Unlike the employee in *Ashley v. Rent-A-Car, supra*, whose percentage permanent partial disability had not been finally assessed at the time the award for medical treatment was made because he had not yet reached maximum improvement, plaintiff in the case now before us had done so, as the findings of and award for disability necessarily imply. Thus, any future medical treat-

ment, however necessary, could not "tend to lessen the *period* of disability," *i.e.* the period of plaintiff's diminished capacity to work.

For the same reasons, the full Commission properly struck that portion of the award directing defendant to pay "future medical expenses for treatment as recommended by plaintiff's doctor so long as it will tend to lessen his period of disability." It is clear that the Industrial Commission is without power to make an award except upon proper findings of fact and conclusions of law drawn therefrom. The findings of fact here show at most that the treatment is necessary to keep plaintiff's condition from deteriorating.

Our holding in this case produces a harsh result. However, in the Workers' Compensation Act "the Legislature has prescribed and limited the benefits to and the burdens upon those subject to its provisions. It is the duty of the courts to declare the law as written, and not to make it." *Millwood v. Cotton Mills, supra,* at 525, 2 S.E. 2d at 563. The Opinion and Award appealed from is

Affirmed.

Chief Judge MORRIS concurs.

Judge MARTIN (Robert M.) dissents.

Judge MARTIN (Robert M.), dissenting:

I dissent from the opinion of the majority because I believe that the amendment to G.S. 97-25, 1973 Sess. Laws, c. 520, s. 1, is applicable here and requires that the case be remanded to the Commission for further findings of fact. In its recent decision in *Schofield v. Tea Co.,* 299 N.C. 582, 264 S.E. 2d 56 (1980), the Supreme Court applied the 1973 amendment to G.S. 97-25 retroactively in a case in which the claim arose, as did the present case, out of an accident occurring prior to the effective date of the amendment. The statute, in its present form and as applied in *Schofield,* provides in part that the employer shall furnish:

[m]edical, surgical, hospital, nursing services, medicines, sick travel, rehabilitation services, and other treatment including medical and surgical supplies as may reasonably be required to effect a cure or give relief and for such additional time as in the judgment of the Commission will tend to lessen the period of disability .... .

In enacting 1973 Sess. Law, c. 520, s. 1, therefore, the legislature intended to eliminate the ten-week limitation on treatments which are necessary "to effect a cure or give relief." Thus, as I interpret the statute, an award by the Commission requiring the furnishing of medical treatment as provided in amended G.S. 97-25 may be based upon any one of three alternative findings specified in the statute, that is, that such treatment is reasonably required (1) to effect a cure, (2) to give relief, *or* (3) if additional time is required, to lessen the period of disability.

It is clear upon the record in the present case that the continuing medical treatment which plaintiff will require throughout his life as a result of the terrible permanent injuries which he received in his accident will never "effect a cure," or "lessen the period of [his] disability." Thus, neither the first nor the third finding required by G.S. 97-25 as a prerequisite to the award of medical expenses could be made in the present case. There is, however, abundant evidence in the record that continuing medical treatment and provision of supplies will be necessary to maintain this plaintiff at his present, however poor, level of health, evidence which in my view would amply support a finding by the Commission that such treatment is reasonably required to "give relief." Upon such a finding, an award requiring the employer to provide the cost of the treatment could be based.

It is undisputed here that plaintiff suffered an injury by accident arising out of and in the course of his employment. He should, therefore, be entitled to compensation to the full extent allowed by a liberal interpretation of our Workers' Compensation Act. As the policy of the Act was stated by Justice Seawell in *Barber v. Minges*, 223 N.C. 213, 25 S.E. 2d 837, (1943):

The primary purpose of legislation of this kind is to compel industry to take care of its own wreckage. It is said to be acceptable to both employer and employee, because it reduces the cost of settlement and avoids delay. To the employee, it means a certainty of some sort of compensation for an injury received in the course of business; and to the employer, it reduces unpredictability of loss and puts it on an actuarial basis, permitting it to be treated as "overhead," absorbed in the sales price, and thus transferred to that universal beast of economic burden, the consumer. *Allen v. State*, 160 N.Y. Supp., 85; *Village of Kiel v. Industrial Commission* (Wis.), 158 N.W., 68. It is said to be humanitarian and economical as opposed to wasteful in the conduct of the enterprise, and is referred to the propriety of keeping loss by accident incidental to employment chargeable to the industry where it occurs. *Kennerson v. Thomas Towboat Co.*, 89 Conn., 367, 94 A., 372. It is called "an economic system of trade risk." Losses incidental to industrial pursuits are like wrongs and breakage of machinery — a cost of production." *Mackin v. Detroit-Limken Axle Co.*, 187 Mich., 8, 153 N.W., 49; *Village of Kiel v. Industrial Commission, supra*. It should be charged against the industry responsible for the injury. *Klawinski v. Lake Shore and N.S. Ry. Co.*, 185 Mich., 643, 152 N.W., 213; Schneider, Workmen's Compensation Law, Permanent Edition, s. 1.

223 N.C. at 216-217, 25 S.E. 2d at 839.

Although the above-quoted language refers specifically to private industry and its employees, the policy expressed therein should be equally applicable where, as here, a State employee is involved. It is only just that, where the language of G.S. 97-25 permits payment for treatment of an injured State employee, the taxpayers of this State should ultimately bear the cost of medical treatment necessitated by an accident incidental to that employment where that treatment will "give relief."

Because the Commission failed to make any findings of fact as to whether the medical treatment involved here is reasonably required to "give relief," I would remand the case for further proceedings.